The ANNIE GARDNER FOUNDATION, etc., et al., Appellants,

v.

Emily GARDNER, etc., et al., Appellees.

Court of Appeals of Kentucky.

Nov. 29, 1963.

Rehearing Denied March 13, 1964.

Farland Robbins, Mayfield, James W. Stites, S. Russell Smith, Edwin H. Perry, Louisville, Malcolm R. Boaz, Mayfield, for appellants.

Charles I. Dawson, Edwin F. Schaeffer, Jr., Louisville, Louis Cox, Frankfort, L. M. Tipton Reed, Mayfield, David R. Reed, Paducah, for appellees.

MOREMEN, Judge.

This is an appeal from an order in the Graves Circuit Court sustaining appellees' motion to abate and dismiss an action for injunctive relief upon the ground that the same parties were already litigating the same issues in a will contest suit.

Ed Gardner died on June 4, 1958 at the age of 87, a resident of Mayfield. His will was probated June 12, 1958. The entire estate was devised and bequeathed to the First National Bank of Mayfield to hold in trust. Practically all the income was to be distributed to the Annie Gardner Foundation, a charitable organization. From that time the estate has been in continuous litigation. In order better to understand the issues here, a short summation of that litigation is required.

Ed Gardner had no children and his wife, Annie Gardner, had predeceased him. At the date of Ed Gardner's death, only one brother was living, Bunk Gardner, Sr., who thereafter died on October 27, 1960. Also living at the time of Ed Gardner's death was Bunk Gardner, Jr., the only son of Bunk Gardner, Sr. Emily Gardner is the wife of Bunk Gardner, Jr. They have two infant children, Bunk Stephen and Anne, both of whom were alive at the time of the death of their great-uncle, Ed Gardner.

In January 1959, the First National Bank of Mayfield, as executor of the will of Ed Gardner, paid Bunk Gardner, Sr. and Bunk Gardner, Jr. $50,000, which they agreed to accept as "full, final and complete settlement of all claims, causes of action, or demands of any and every kind, which said Bunk Gardner, Jr. and/or Bunk Gardner, Sr. have or might have against the Estate of Ed Gardner, Deceased, by reason of be-ing related to the said Ed Gardner." Shortly after execution of the release, Bunk Gardner, Sr. filed a suit in the Graves Circuit Court to contest the will of Ed Gardner. The circuit court held that both the will and the release were void. On appeal to this court, the judgment was reversed with directions that the appeal from the order of the county court probating the will be dismissed. First National Bank of Mayfield v. Gardner, Ky., 348 S.W.2d 839. Other cases which have dealt with various phases of this litigation are: Commonwealth ex rel. Ferguson v. Gardner (1959) Ky., 327 S.W.2d 947; First National Bank of Mayfield v. Stahr (1959) Ky., 329 S.W.2d 582; First National Bank of Mayfield v. Gardner, (1959) Ky., 330 S.W.2d 409; and First National Bank of Mayfield v. Lisanby (1962) Ky., 354 S.W.2d 32.

On February 13, 1962, Emily Gardner (Mrs. Bunk Gardner, Jr.) as guardian for her two infant children, filed another will contest action in the Graves Circuit Court. In this suit she alleged that the documents admitted to probate by the Graves County Court as the last will and testament of Ed Gardner were not properly executed. In this suit she took the position that the document of release, discussed above, executed by Bunk Gardner, Sr. and Bunk Gardner, Jr. simply operated as a surrender and disclaimer of any interest which either of the signers had or might subsequently have in the estate of Ed Gardner. She further alleged:

"By reason of the facts stated in Paragraph 5 hereof, and because of the surrender and disclaimer of their grandfather, Bunk Gardner, Sr., and their father, Bunk Gardner, Jr., of their respective interests in the estate of Ed Gardner, deceased, the infants, Bunk Stephen Gardner and Anne Gardner, descendants of Bunk Gardner, Sr. (his grandchildren) became the next in line under KRS 391.010 to succeed to the estate of Ed Gardner should it be determined that he died intestate, they

being the next of kin to Ed Gardner, excluding their grandfather, Bunk Gardner, Sr., and their father, Bunk Gardner, Jr., and they are entitled through their guardian, the appellant herein, to challenge and contest the validity of the probated documents referred to in Paragraph 3 hereof as the last will of Ed Gardner, deceased."

The Annie Gardner Foundation filed an answer in which, inter alia, were a plea of res judicata and a plea of release, and by counterclaim it stated that they were entitled to a perpetual injunction enjoining Emily Gardner, as guardian, the children, their heirs, executors and assigns from prosecuting the suit or in the future making any claims to any part of the estate of Ed Gardner. The prayer of the counterclaim asked for a perpetual injunction. The First National Bank of Mayfield also filed an answer in which, among other things, it pled estoppel as to the maintenance of the action. Hereafter in this opinion we will refer to the above suit as the "will contest suit."

Appellants, the Annie Gardner Foundation, Etc., on August 20, 1962, filed a separate complaint in the Graves Circuit Court in which they sought a permanent mandatory injunction requiring Emily Gardner to dismiss forthwith the will contest suit above described, which was instituted by her on February 13, 1962, in her capacity as guardian for Bunk Stephen Gardner and Anne Gardner.

As grounds for injunctive relief, appellants alleged that they were being vexed and harassed with a groundless law suit brought in violation of the release signed by Bunk Gardner, Sr. and Bunk Gardner, Jr. To show immediate irreparable injury, appellants alleged that the contest suit is: (1) interfering unreasonably with the orderly administration of the Ed Gardner estate, (2) wrongfully depriving persons intended to be benefited in the will—the poor and needy of Graves County, (3)

causing the estate to be decimated by federal income taxes and litigation expenses for which there can be no recovery at law because of the contestants' insolvency. Hereafter this suit will be called the "injunction suit."

The appellees moved to abate and dismiss this injunction suit. The circuit court sustained the motion and dismissed the injunction suit on the ground that the issues in the injunction suit were substantially the same as those in the will contest suit previously filed by Emily Gardner.

Appellants suggest that the basic question on this appeal is whether the grandchildren of Bunk Gardner, Sr. are the next of kin and legal heirs of Ed Gardner under the intestacy laws of this state and, as such, have a right to contest the validity of Ed Gardner's will, notwithstanding the fact that both their father and their grandfather signed an agreement in which they accepted and agreed to the terms and provisions of the Ed Gardner will, which agreement was subsequently found to be binding by this court. Appellants, therefore, insist that an injunction should be issued forever enjoining relatives of the late Ed Gardner from unreasonably interfering with the orderly administration of the estate by the harassment and vexation of groundless law suits. On the other hand, appellees stress the fact that the suit brought by Emily Gardner, as guardian, offered under the terms of the pleadings the opportunity for appellants to obtain the same relief prayed for in the second suit and the circuit court, therefore, properly abated the second action.

The rule of abatement is that a second action based on the same cause will generally be abated where there is a prior action pending between the same parties involving substantially the same subject matter and in which prior action the rights of the parties may be adjudged. See Proctor v. Peoples Bank of Morehead, 283 Ky. 100, 140 S.W.2d 667. The reason for the

existence of the defense of abatement is the idea that no one should be harassed by two actions for the same cause and by the same parties. Conley v. Marshall, 304 Ky. 745, 202 S.W.2d 382. A plea in abatement is a technical and dilatory plea and therefore should not be allowed unless the pleader clearly shows that his situation comes within the reason for the rule.

◼ For the plea of abatement to obtain it is essential that the issue be between substantially the same parties and that these parties appear in the same capacity and represent the same interests in each action.

◼ In some jurisdictions abatement will lie only if the second action is brought by the same plaintiff or plaintiffs against the same defendant or defendants. Crane, Ex'r v. Burns, 235 Ind. 583, 135 N.E.2d 832. In Kentucky, however, the plea of abatement is allowed even where the parties are reversed. Himler Coal Co. v. Kirk, 210 Ky. 28, 275 S.W. 371. In that case the coal company proposed to build a railway line from its mine. This line crossed the corner of a tract of land to which the landowner claimed the coal company had no right-of-way. The coal company filed a petition in equity to enjoin the landowner from interfering with the construction of the railway across the corner of the land. While this action was still pending the landowner brought a separate suit against the coal company charging that it had entered upon his land without right and to his damage in the sum of $20,000. The coal company answered and, among other things, pled the pendency of the first action in abatement. The court held that the coal company should not be required to litigate in two actions pending at the same time in the same court the question of whether it had the proper right-of-way to build the railroad and held that a demurrer to the plea in abatement should have been overruled and the hearing of the second case should have been postponed until the question of the rights of the parties had been determined in the first case.

It is evident that the posture of the parties is of little significance if the judgment on the merits in the prior action will necessarily determine the issue presented in the subsequent suit. This requirement was plainly stated in the recent case of Riddle v. Howard, Ky., 357 S.W.2d 705, where it is written:

"However, it is an essential condition for the application of the rule that the first action shall afford the parties in the second action an adequate and complete opportunity for the adjudication of their rights. So, where the pendency of a suit or proceeding in one court is relied on to defeat or abate a second suit or action in another court of concurrent jurisdiction, it must relate to the same or substantially the same cause of action, and the parties and the relief or remedy sought in the first action must be the same or the equivalent. The rule of abatement does not apply where the second suit has merely a close connection with the other action."

◼ With the rules in mind that before an abatement is meet, it must appear that (1) the parties in the second suit are substantially the same as the parties in the prior suit, and (2) these parties will be afforded an adequate and complete opportunity for the adjudication of their rights and for obtaining the remedy they desired in the first suit, we return to the facts heretofore stated in the opinion.

◼ Although the parties vary in some degree between those in the will contest suit and the injunction suit, this variance is not substantial enough to deny the application of the doctrine of abatement. Many of the parties were of a technical nature and joined because they were acting in various fiduciary capacities. In all these suits, however, the real parties of interest were the immediate kin of Ed Gardner, deceased. Bunk Gardner, Sr. and Bunk Gardner, Jr. and all those who may be act-

ing as personal representatives had been barred by previous litigation. There remain only, with any degree of close consanguinity, the two children who are here as wards of Emily Gardner. The parties may not be identical in name, but the interests represented are the same.

In connection with the second phase of the rule above stated, it seems to us to be a matter of little importance, whether an injunction perpetually enjoining the prosecution of further will contest cases be issued in the first action or the second action, if any will ever be issued. In the prior will contest case the answer challenged the right of the infants to maintain the action for various reasons and the counterclaim asked that the plaintiffs be perpetually enjoined from prosecuting the will contest or making any claim to the estate of Ed Gardner in the future. This issue should be tried out in that case. The second injunction suit was entirely unnecessary.

Judgment affirmed.